# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES ROBERT JOSEPH CHENEY,
          *Petitioner-Appellant,*

v.

MICHAEL WASHINGTON, Chairman,
Oregon Board of Parole and Post
Prison Supervision,
          *Respondent-Appellee.*

No. 08-35204

D.C. No.
05-CV-01826-TC

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, District Judge, Presiding

Argued and Submitted
May 3, 2010—Portland, Oregon

Filed August 2, 2010

Before: Andrew J. Kleinfeld, Carlos T. Bea and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

11117

**COUNSEL**

Kendra M. Matthews, Ransom Blackman LLP, Portland, Oregon, for petitioner-appellant James Robert Joseph Cheney.

Carolyn Alexander, Assistant Attorney General, Salem, Oregon, for respondent-appellee Michael Washington.

**OPINION**

IKUTA, Circuit Judge:

James Cheney claims he was deprived of his Sixth Amendment right to effective assistance of counsel because his defense counsel failed to object properly at two points during his trial. This appeal raises the question whether the state court's decision rejecting this claim was objectively unreasonable. Applying "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the [28 U.S.C.] § 2254(d)(1) standard," *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009), we hold that the state court's decision was not contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

I

One day in January 1998, Cheney visited the home shared by his friends Tina Deitz and Deitz's boyfriend, Tony Martin. Deitz's nine-year-old daughter, T.D., and twelve-year-old son were home alone, because their school had been cancelled due to snow. Cheney testified that, once at the house, he carried T.D. into her bedroom to retrieve his hat, which T.D. had hidden during one of Cheney's previous visits. T.D.'s brother reported observing, through a crack in the door connecting the bedroom to a bathroom, Cheney rubbing T.D.'s chest and attempting to put his tongue inside her mouth, while T.D. lay

frozen on her bed with "an extremely scared look on her face." T.D.'s brother immediately called his grandparents, who removed the children from the house and contacted Deitz. Deitz instructed Cheney to leave the house, which he did. Deitz also contacted law enforcement, who sent Detective Dwayne Troxel and a case worker from the State Office for Services to Children and Families ("SCF") to interview the children that evening.

Based on this incident and two others reported by T.D., Cheney was charged with four counts of first-degree sexual abuse. In the government's case-in-chief, T.D. testified about three instances in which Cheney had touched her sexually. First, T.D. stated that Cheney had held her on his lap and rubbed her vaginal area underneath her underpants while on a camping trip. Second, T.D. reported that Cheney touched her "private" while alone in a room in her house. The third incident was the one witnessed by her brother on the snow day. The government also presented T.D.'s videotaped interview with the SCF case worker, which related information similar to T.D.'s trial testimony. In addition, T.D.'s brother testified to what he had seen through the crack in the door. The balance of the government's case consisted of witnesses intended to bolster T.D. and her brother's credibility or impeach Cheney's.

The defense denied the abuse allegations. Cheney testified that he and T.D. would play a "kissing game," where T.D. would tease Cheney by threatening to kiss him and by making kissing noises, but denied that there was ever any sexual purpose behind these contacts. Cheney admitted that, on the snow day, after T.D. had given him "a little peck on the lips," he had tickled her and given her a blubbery kiss while she laid on her bed, but maintained that this was merely an act of horseplay.

The defense's theory at trial was that the investigation into the sexual abuse allegations was biased, and that investigators

wrongly assumed Cheney was guilty from the outset and manipulated the evidence to confirm this belief. The defense challenged T.D.'s credibility through experts who testified that children are susceptible to suggestion when interviewed by police. The defense also called Detective Troxel to testify regarding his work with the Hood River Interagency Child Abuse Protection Team. The defense's questioning suggested that Troxel's Child Abuse Protection Team had an institutional bias toward establishing guilt, as shown by the agency's published credo, which stated that "the role of the Hood River County Sheriff's Department is the securing of evidence to issue criminal charges and to obtain a conviction."

In response, the prosecutor engaged in the following line of cross-examination:

| [Prosecutor]: | Detective Troxel, you investigate sexual abuse cases on a regular basis as part of your job? |
|---|---|
| [Troxel]: | Unfortunately too regular. |
| [Prosecutor]: | Okay. And sometimes reports turn out not to be true, or unfounded, don't they? |
| [Troxel]: | Yes, they do. |
| [Prosecutor]: | Sometimes no one's ever charged with any crimes; isn't that true? |
| [Troxel]: | That's very true. |
| [Prosecutor]: | So you wouldn't, in that case, choose to prosecute or recom- |

mend prosecution of a case, would you?

[Troxel]:          If, based on the information I received, I believed that no crime had been committed, I would not — I would write up my findings and send it to the D.A.'s office, but not recommend prosecution, no.

Cheney's defense counsel did not object to this questioning.

In closing argument, defense counsel argued that the police and prosecutor's efforts to convict Cheney were motivated by ego, stating:

The State is desperate to get a conviction. This is a big deal. Resources are put into this and, frankly, there's egos too. The State is trying to twist Mr. Cheney's statements to people to make you think it's some kind of confession.

. . . .

[T]he evidence is weak, because the children themselves have said in their statements, consistently, when they give narratives, that the first—the first time they talk about it, that there was no touching, and the only reason rubbing and private parts come into it is because the police are collecting evidence of a crime so they can obtain a conviction.

And once the district attorney gets involved, there's —there's, you know, there's no stopping it. The— the freight train is on the tracks and it's going down the road and the kids are on board and they know

that everyone's relying upon them. This is a really big show.

In rebuttal, the prosecutor responded with the following:

[Defense counsel] talked about my ego being at stake and the fact that we always want convictions no matter what, and that is simply untrue. Let me tell you about what—what my job is.

My job as a prosecutor—and I've been a defense attorney. I've been where [defense counsel] is sitting right now. And the role I have now is very different, and I am different. I cannot just advocate for whatever my client tells me to say. And whether it's true or not, I cannot get up here and say that. My job, by law, is I—I can only advocate for cases where I believe that it's true, where I believe that it happened. If I think it's a close case, if I think it's a case I could win, and I still don't feel good about it, I'm required by law not to go through with it. That's a very different job than [defense counsel] has. Very different.

And what is the job of the police in this particular case? What did they tell you? There are many cases where we do not recommend prosecution. There are many cases that we find unfounded and we don't go ahead with those. And it is only on true cases that we are required to recommend prosecution. And that was the testimony of Dwayne Troxel.

After the prosecutor concluded her rebuttal and the court had begun to instruct the jury, defense counsel moved for a mistrial outside the jury's presence, arguing that the prosecutor's remarks impermissibly vouched for T.D.'s credibility. The trial court agreed that the prosecutor's statements were improper, but nevertheless denied the motion for a mistrial.

Instead, the trial court offered to give a curative instruction, which defense counsel accepted. The trial court subsequently instructed the jury:

> The attorneys' statements and arguments are not evidence. If your recollection of the evidence is different from the attorneys' recollection, you must rely on your own memory. Personal beliefs asserted by either counsel in closing arguments as to the truth or falsity of facts is not to be considered by you. You are the sole judges of the facts.

By a vote of 10 to 2, the jury found Cheney guilty on all four counts of first-degree sexual abuse.[1] After the verdict, but before sentencing, Cheney and the government entered into an agreement in which Cheney agreed not to seek a new trial and to admit guilt in open court in return for receiving concurrent, rather than consecutive, sentences of seventy-five months. The trial court imposed that sentence and also imposed a ten-year term of post-prison supervision. Cheney was released from prison on March 8, 2005, and is currently serving the balance of his ten-year term of post-prison supervision.

## II

On appeal in state court, Cheney asserted (among other claims) that the trial court should have granted his motion for a mistrial, or directed one sua sponte, because the prosecutor's statements in closing argument improperly suggested a personal belief in his guilt.

The Oregon Court of Appeals rejected these claims, and affirmed Cheney's conviction. The Oregon Supreme Court denied review.

---

[1]Under Oregon law, except in cases involving murder or aggravated murder, "the verdict of a trial jury in a criminal action shall be by concurrence of at least 10 of 12 jurors." Or. Rev. Stat. § 136.450.

Cheney next challenged his conviction in state post-conviction proceedings. Instead of claiming prosecutorial misconduct as on direct appeal, Cheney's post-conviction petition asserted ineffective assistance of counsel. Relevant here, Cheney argued that defense counsel failed to meet the minimum constitutional standard of effective assistance by (1) failing to object when the prosecutor elicited testimony from Detective Troxel that the police recommend prosecution only in cases where they believe a crime has been committed, and (2) failing to make a timely objection when the prosecutor vouched for the complainant's credibility during closing argument.[2]

The Oregon post-conviction court denied Cheney's petition, concluding that Cheney "was not denied the right to assistance of counsel, as guaranteed by . . . the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)." With respect to defense counsel's failure to object to the colloquy between the prosecutor and Detective Troxel on cross-examination, the state court held that Cheney had "failed to prove that trial counsel's failure to object to the admission of certain evidence fell below the constitutional standard for effective assistance of counsel." As for defense counsel's failure to make a timely objection to the prosecutor's improper closing remarks, the state court determined that, while the prosecutor's statements "caused . . . concern, . . . [they] did not affect the outcome of the trial or deny petitioner a fair trial." The Oregon Court of Appeals affirmed the denial of Cheney's petition without opinion, and the Oregon Supreme Court declined further review.

---

[2]Throughout state post-conviction proceedings and in his federal habeas petition before the district court, Cheney argued as an additional ground for relief that his attorney was ineffective in failing to make a timely motion for a mistrial in response to these two incidents of alleged prosecutorial misconduct. Because Cheney does not raise these issues in this appeal, we do not consider them in our decision here.

Cheney filed an application for federal habeas relief under 28 U.S.C. § 2254, which repeated the same arguments from his state post-conviction petition. The district court denied Cheney's application, rejecting the magistrate judge's recommendation to grant the writ based on defense counsel's failure to make a timely objection to the prosecutor's remarks at closing argument. The district court held that the state court's conclusion that defense counsel's allegedly deficient representation was not prejudicial did not constitute an unreasonable application of *Strickland*. Cheney timely filed a notice of appeal.

## III

"We review *de novo* the district court's decision to grant or deny a petition for a writ of habeas corpus." *Moses v. Payne*, 555 F.3d 742, 750 (9th Cir. 2009) (alteration and internal quotation marks omitted).

**[1]** Because Cheney filed his federal habeas petition after April 24, 1996, his petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *Woodford v. Garceau*, 538 U.S. 202, 204 (2003); *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004). Under § 2254(d)(1), a federal court must deny habeas relief with respect to any claim adjudicated on the merits in a state court proceeding unless the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the Supreme Court's decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

**[2]** Cheney does not argue that the relevant state court decision was "contrary to" any clearly established Supreme

Court holding.[3] Rather, Cheney's argument centers on the "unreasonable application" clause of § 2254(d)(1). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Indeed, the Supreme Court has repeatedly instructed that "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks omitted); *e.g.*, *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009); *Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam); *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). Rather, for the federal court to issue the writ, the state court's application of Supreme Court precedent must be "objectively unreasonable." *Renico*, 130 S. Ct. at 1862 (internal quotation marks omitted). This is a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Id.* (internal quotation marks and citations omitted).

[3] When a habeas petitioner asks a federal court to review a state court's application of the *Strickland* standard under § 2254(d)(1), we must give state courts "even more latitude [than is typical under AEDPA] to reasonably determine that a defendant has not satisfied" the *Strickland* standard. *Knowles*, 129 S. Ct. at 1420. This heightened deference stems from the nature of *Strickland*'s two-prong standard for evalu-

---

[3]This claim, had it been raised, would have failed. A state court's decision is "contrary to" clearly established Supreme Court holdings only if it "applies a rule that contradicts the governing law set forth" in Supreme Court cases, *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [that Supreme Court] precedent," *id.* at 406. In this case, the state court correctly identified *Strickland* as the controlling legal standard, and there is no Supreme Court decision considering facts that are "materially indistinguishable" from those of this case.

ating ineffective assistance of counsel claims. *Id.*; *see Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

Under *Strickland*'s first prong, a defendant must prove that counsel's performance was "deficient." *Knowles*, 129 S. Ct. at 1419. Counsel's performance will be held constitutionally deficient only if the defendant proves that it "fell below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. In reviewing counsel's performance for deficiency, courts "must be highly deferential" and avoid the temptation to "conclude that a particular act or omission of counsel was unreasonable" simply because in hindsight the defense has proven to be unsuccessful. *Id.* at 689. Courts are required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The defendant bears the burden of overcoming the strong presumption that counsel performed adequately. *Id.*

Even if the defendant succeeds in showing that counsel's performance was deficient, the second prong of the *Strickland* test requires the defendant to prove that counsel's deficiencies were prejudicial to the defense. *Id.* at 692. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. As with deficiency, *Strickland* places the burden of proving prejudice on the defendant, not the government. *Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

The Supreme Court has provided two reasons why the federal court must apply a "doubly deferential" judicial review to a state court's application of the *Strickland* standard under AEDPA. *Gentry*, 540 U.S. at 5-6. First, as noted above, *Str-*

*ickland* instructs courts to review a defense counsel's effectiveness with great deference, *Strickland*, 466 U.S. at 689, and AEDPA requires federal courts to defer to the state court's decision unless its application of Supreme Court precedent was objectively unreasonable, *Renico*, 130 S. Ct. at 1862. When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as "doubly deferential." *Gentry*, 540 U.S. at 6.

**[4]** Second, our review is "doubly deferential" because *Strickland* provides courts with a general standard, rather than a specific legal rule. *Knowles*, 129 S. Ct. at 1420; *see also Bobby v. Van Hook*, 130 S. Ct. 13, 16 (2009) (per curiam) (holding that *Strickland* necessarily established a general standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant" (internal quotation marks omitted)). Because judicial application of a general standard "can demand a substantial element of judgment," the more general the rule provided by the Supreme Court, the more latitude the state courts have in reaching reasonable outcomes in case-by-case determinations. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). In turn, the state courts' greater leeway in reasonably applying a general rule translates to a narrower range of decisions that are objectively unreasonable under AEDPA. *See id.* Accordingly, we review a state court's decision applying *Strickland*'s general principles with increased, or double, deference. *See Knowles*, 129 S. Ct. at 1420.

When applying this heightened deferential standard, we review the "last reasoned decision" by the state court addressing the petitioner's claim. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, the last reasoned decision

addressing Cheney's ineffective assistance of counsel claim is that of the Oregon trial court on state post-conviction review.

IV

Cheney asserts that the state court was objectively unreasonable in denying him relief under *Strickland* because, even under our doubly deferential standard of review, his counsel's errors at trial were both deficient and prejudicial. As in his state post-conviction petition, Cheney points to two omissions of his counsel: his counsel's failure to object to the colloquy between the prosecutor and Detective Troxel on cross-examination, and his counsel's failure to make a timely objection to the prosecutor's vouching remarks during closing argument.[4] We consider each of Cheney's arguments in turn.

A

We begin by reviewing the state court's ruling that defense counsel's failure to object to Troxel's testimony was not deficient because it did not "f[a]ll below the constitutional standard for effective assistance of counsel." We hold that the state court was not objectively unreasonable in reaching this conclusion.

---

[4]In his federal habeas application, Cheney petitioned for habeas relief on ineffective assistance of counsel grounds, but the district court marked on a preprinted checklist that it was granting a certificate of appealability (COA) for "prosecutorial misconduct." The parties agree that this COA was intended to cover Cheney's claims of ineffective assistance due to defense counsel's response to the prosecutor's alleged misconduct during closing argument, but dispute whether the COA extends to counsel's response to the colloquy between the prosecutor and Detective Troxel. Because prosecutorial misconduct may occur through the prosecutor's own vouching remarks or when the prosecutor elicits vouching testimony from witnesses, *see United States v. Rudberg*, 122 F.3d 1199, 1204 (9th Cir. 1997), we analyze Cheney's ineffective assistance of counsel claim with respect to both incidents.

**[5]** The state court could have reasonably concluded that defense counsel had a strategic reason for remaining silent during the prosecutor's questioning. Under *Strickland*, the court must indulge "a strong presumption that [counsel acted] for tactical reasons rather than through sheer neglect." *Gentry*, 540 U.S. at 8 (citing *Strickland*, 466 U.S. at 690). This presumption takes on particular force where, as here, "a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Id.* at 6. The government argues that defense counsel could have decided not to object to Troxel's testimony because it led Troxel to admit not only that abuse allegations are sometimes baseless, but that his personal views were sometimes a determinative factor in the decision whether to prosecute. Such testimony would advance the defense's theory that the police were motivated by both personal and systemic bias. In light of *Strickland*'s presumption, we cannot say that it would be objectively unreasonable for the state court to "deem counsel's choice . . . a tactical decision about which competent lawyers might disagree," *Bell v. Cone*, 535 U.S. 685, 702 (2002). Because the state court's denial of this claim was not objectively unreasonable, there is no basis under AEDPA to reverse it here.

B

We next turn to Cheney's claim that the state court was objectively unreasonable in concluding that he was not prejudiced by his counsel's failure to make a timely objection to the improper remarks in the prosecutor's closing statement.

Cheney theorizes that if his counsel had interrupted the prosecutor immediately after the first improper statement, the court would have prevented the prosecutor from making any further damaging comments and would have immediately directed the jury to disregard the statement. Defense counsel's failure to stop the prosecutor from making such remarks was

prejudicial because, according to Cheney, the case was a close one: the prosecutor admitted during a plea discussion that the government had only a "50-50" chance of prevailing, and two jurors out of twelve voted to acquit. Neither the prosecution nor the defense had overwhelming evidence in its favor, Cheney contends, so the case hinged on whom the jury believed, T.D. or Cheney. Because the prosecutor's remarks impermissibly placed the weight and prestige of the government behind T.D.'s version of events, Cheney argues that they tipped the balance in favor of conviction. Accordingly, Cheney claims that, but for defense counsel's failure to shield the jury from this impropriety, the "result of the proceeding would have been different," *Strickland*, 466 U.S. at 694.

**[6]** This argument fails because, when considered in context, the state court could reasonably conclude that there was no reasonable probability of a different outcome had defense counsel made an immediate objection to the prosecutor's imprudent remarks. Cheney's counsel brought the prosecutor's impropriety to the court's attention with only a slight delay, and the court provided a curative instruction advising the jurors that "[p]ersonal beliefs asserted by either counsel in closing arguments as to the truth or falsity of facts is not to be considered" in judging the facts. Jurors are presumed to follow the court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *see also Strickland*, 466 U.S. at 694 ("[A] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the . . . jury acted according to the law."). Further, it is well established that "arguments of counsel generally carry less weight with a jury than do instructions from the court." *Boyde v. California*, 494 U.S. 370, 384 (1990). In view of the presumption that the jury properly disregarded the prosecutor's statements in accordance with the curative instruction, it was reasonable for the state court to conclude that the prosecutor's remarks, and counsel's failure to prevent those remarks, were not prejudicial. *Cf. Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (holding under the Due Process Clause that a defendant was

not prejudiced by a prosecutor's improper statements in closing argument, in part because "[t]he trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence").

**[7]** Moreover, we must take into account that the offending remarks in question were in response to defense counsel's closing statements that the government was twisting the evidence to secure a conviction and protect its ego. Viewed in this light, the jury may have understood the remarks as invited by the defense's provocations and therefore discounted them or accorded them less significance, which further weighs against the holding of prejudice here. *Cf. id.* at 182 (citing *United States v. Young*, 470 U.S. 1, 13 (1985)) (using the doctrine of "invited response" to determine what effect a prosecutor's improper statements had "on the trial as a whole").

**[8]** Because the state court could have reasonably concluded that any delay in objecting to the prosecutor's imprudent statements did not "undermine confidence in the outcome" of the trial, *Strickland*, 466 U.S. at 695, we uphold the state court's decision to deny Cheney's claim.[5]

V

Applying "doubly deferential judicial review" to Cheney's claim, *Knowles*, 129 S. Ct. at 1420, we hold that Cheney has failed to show that the state court's decision "was contrary to,

---

[5]Cheney also claims he was prejudiced by his counsel's failure to argue for a curative instruction that specifically referenced the prosecutor's improprieties in closing argument. The parties dispute whether this claim was properly exhausted. Without reaching the exhaustion issue, this claim fails on the merits. *See* 28 U.S.C. § 2254(b)(2). Because the state court could reasonably conclude that the curative instruction given by the court was sufficient to negate any prejudice resulting from the prosecutor's comments, it follows that Cheney was not prejudiced by his counsel's failure to request a more specific instruction.

or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court" under § 2254(d)(1). Accordingly, we deny his petition for habeas relief.

**AFFIRMED.**