**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| VICTOR BERNARD TRILLO, *Petitioner-Appellant*, <br><br> v. <br><br> MARTIN BITER, Acting Warden; ATTORNEY GENERAL FOR THE STATE OF CALIFORNIA, *Respondents-Appellees*. | No. 11-15463 <br><br> D.C. No. 2:06-cv-01287-JKS <br><br><br> AMENDED OPINION |

Appeal from the United States District Court
for the Eastern District of California
James K. Singleton, Senior District Judge, Presiding

Argued and Submitted
March 13, 2014—San Francisco, California

Filed June 16, 2014
Amended October 6, 2014

Before: J. Clifford Wallace, M. Margaret McKeown,
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Wallace

## SUMMARY[*]

### Habeas Corpus

The panel filed an amended opinion affirming the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging a second-degree murder conviction.

The panel held that the prosecutor's unsupported comment implying that the defendant had switched his story, which was improper under clearly established federal law, did not materially affect the fairness of the proceedings because the trial court sustained the defendant's objection and the trial court instructed the jury that statements made by the attorneys during trial are not evidence.

The panel held that there was a sufficient basis for the prosecutor's statements about witness inconsistencies and his implication that the witnesses had coordinated their testimony.

The panel held that the California Court of Appeal's determination that the prosecutor's statement urging the jurors to convict – because they might be "very uncomfortable" explaining to neighbors a vote to acquit – was an unreasonable interpretation of clearly established Supreme Court law barring the government from pressing the jury to convict. The panel concluded, however, that the defendant was not deprived of a fair trial because the prosecutorial misstatement did not have a substantial and

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

injurious effect or influence in determining the jury's verdict, and therefore did not so infect the trial with unfairness as to make the resulting conviction a denial of due process.

The panel held that the defendant's counsel was not constitutionally ineffective for failing to object to prosecutorial statements that the defendant had removed his shirt, and that counsel's failure to object to the prosecutor's statements about gang connections did not prejudice the defense.

The panel held that the exclusion of an uncorroborated witness statement that might have supported a self-defense theory did not violate due process.

---

## COUNSEL

Steven C. Sanders (argued), Sanders & Associates, West Sacramento, California, for Petitioner-Appellant.

R. Todd Marshall (argued), Deputy Attorney General, Kamala D. Harris, Attorney General of California, Michael P. Farrell, Senior Assistant Attorney General, and Catherine Chatman, Supervising Deputy Attorney General, Sacramento, California, for Respondents-Appellees.

---

## OPINION

WALLACE, Circuit Judge:

After Victor Trillo was convicted of second-degree murder by a trial court of the State of California, his conviction affirmed by the California Court of Appeal, and his state collateral remedies exhausted, he filed this habeas petition pursuant to 28 U.S.C. § 2254. The district court denied the petition. Trillo appealed. We granted a certificate of appealability on three issues: "(1) whether the prosecutor [in Trillo's trial] committed prejudicial misconduct during closing argument; (2) whether trial counsel was constitutionally ineffective for failing to object to additional closing remarks made by the prosecutor; (3) whether the trial court violated petitioner's Sixth Amendment right to present a meaningful defense by excluding testimony regarding a statement made by a witness to the victim which might have corroborated petitioner's theory of defense." We have jurisdiction over this timely filed appeal under 28 U.S.C. §§ 2253, 2254, and 1291. We affirm.

I.

Trillo was at a party with several friends. Two individuals at the party got into a fist fight. Confusion and yelling followed. Several men took off their shirts and began fighting. Trillo had a gun, and fired at another partygoer, killing him. Trillo was later arrested after fleeing the scene and the state.

Trillo's theory in his state court trial for second-degree murder was that he had acted in self-defense. According to Trillo, during the fight he was hit in the back, and then saw

someone approach him with a knife. At trial, Trillo's attorney attempted to have admitted witness testimony that a man had approached the victim after the shooting asking "Was it worth it?" In a hearing held outside of the jury's presence, the trial court refused to allow this testimony, because there was an insufficient foundation to admit the statement.

Trillo's attorney objected to three statements made by the prosecutor during his closing argument. First, the prosecutor stated that the "[f]irst story was a lame one, first story was I wasn't the shooter" — implying that Trillo had changed his theory of the case from innocence to self-defense. After Trillo's attorney objected to this statement, the court admonished the jury that "I don't believe there was" evidence supporting the prosecutor's argument. A few moments later, the prosecutor suggested that friends of Trillo's who had testified on his behalf had changed the stories they provided to investigators after coordinating with each other. Defense counsel again objected, which led to a hearing out of the jury's presence. The judge ultimately denied Trillo's motion for a mistrial or curative statement to the jury. Finally, the prosecutor suggested what would happen to members of the jury if they "walked" Trillo after they "got the instructions about reasonable doubt." The prosecutor stated that if jurors informed a neighbor about the acquittal, "[y]our neighbor's going to be, you did what? And you're going to be very uncomfortable." Defense counsel objected. The trial court told the prosecutor to continue but to "relate to the evidence."

The prosecution also made other statements in its closing argument to which Trillo's attorney did not object, including statements that Trillo had removed his shirt at the beginning of the fight, and that Trillo belonged to a gang and had a criminal history.

The jury convicted Trillo of murder. The judge denied his motion for a new trial. He appealed the conviction to the California Court of Appeal, which affirmed. *People v. Trillo*, 2004 WL 2943242 (Cal. Ct. App. Dec. 1, 2004). The California Supreme Court denied his petition for review. Trillo filed a timely state habeas petition and a timely federal habeas petition. His federal petition was stayed to allow him to exhaust his state court remedies. The County Superior Court, the California Court of Appeal, and the California Supreme Court denied his state petition.

After the denial by the California Supreme Court, he renewed his federal petition. The district court denied the petition. Trillo timely appealed from that judgment.

II.

We review the district court's judgment denying habeas relief de novo, and its findings of fact for clear error. *Hein v. Sullivan*, 601 F.3d 897, 905 (9th Cir. 2010). Under the Antiterrorism and Effective Death Penalty Act of 1996, we only grant a federal habeas petition for claims adjudicated on the merits by the state courts, if the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 131 S. Ct. 770, 783–84 (2011), *quoting* 28 U.S.C. § 2254(d).

It appears that there was some confusion regarding the issues in the certificate of appealability we granted. The first issue is "whether the prosecutor [in Trillo's trial] committed

prejudicial misconduct during closing argument." The second issue is "whether trial counsel was constitutionally ineffective for failing to object to additional closing remarks made by the prosecutor." Thus, the first issue on appeal is whether the prosecutor committed prejudicial misconduct during closing argument *in the comments to which Trillo's trial counsel objected*. The second issue on appeal is whether Trillo suffered from ineffective assistance of counsel for the failure of his trial counsel to object to other prosecutorial comments. The distinction is important because the issues are governed by different standards. The first is governed by the deferential habeas standard from 28 U.S.C. § 2254(d). The second is governed by the "doubly" deferential standard, under which we defer both to the state courts' determination that trial counsel did not act ineffectively and then also defer to the trial counsel's representation as reasonable, so as not to "second-guess" trial counsel who "observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 131 S. Ct. at 788.

In his opening brief filed in this court, Trillo's argument regarding the first issue for our review included both prosecutorial statements to which his trial counsel had objected and prosecutorial statements to which his counsel did not object. In his reply brief, though, he clarified that the first issue for our review pertains solely to statements made by the prosecutor to which Trillo's trial counsel objected. That is the correct interpretation of our certificate of appealability.

III.

Trillo's counsel objected to three prosecutorial comments during arguments. We now consider them.

A.

The prosecutor first argued to the jury that Trillo had initially told the police that he was not the shooter, and that "story was a lame one." There was no evidence to support the State's implication that Trillo had switched his story. That comment was improper under clearly established federal law, as the California Court of Appeal later correctly recognized on direct appeal. The state trial court sustained Trillo's counsel's objection to that statement, and told the jury and prosecutor "I don't believe there was [any evidence of the government's implication], why don't you continue."

As the California Court of Appeal correctly held, the prosecutor's comment did not materially affect the fairness of the proceedings because the trial court sustained the defendant's objection, and the trial court instructed the jury that "[s]tatements made by the attorneys during trial are not evidence." We presume that juries listen to and follow curative instructions from judges. *See Fields v. Brown*, 503 F.3d 755, 782 (9th Cir. 2007).

The prosecutor then argued that the testimony of Trillo's witnesses was inconsistent with prior statements they had made, implying that they had contacted each other and had coordinated their testimony to protect Trillo. Defense counsel again objected, which led to a hearing outside the presence of the jury. Ultimately, the trial court rejected Trillo's argument that the prosecutor's statements about witness inconsistencies

and implication that the witnesses had coordinated their testimony were improper, and refused to instruct the jury separately on the issue.

The comments were indeed appropriate, as the California Court of Appeal later recognized on direct review. Some of the witnesses who had testified on Trillo's behalf had made inconsistent statements, and admitted as much under cross-examination. One witness did suggest that a defense investigator hinted that she should change her testimony to support Trillo's self-defense theory. Because there was a sufficient basis for the prosecutor's statements, he did not commit misconduct by pointing out the inconsistencies in witness testimony, especially when the witnesses themselves admitted their statements were inconsistent. *Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000). This was not, as Trillo argues, the same "exact line" of argument as the prior government statement. The prosecutor was not arguing that Trillo had changed his story, but rather that the witnesses who supported Trillo's story had been inconsistent. That was an acceptable argument based on the testimony.

Thus far, the only erroneous statement made by the prosecutor was rectified by the sustaining of the objection.

B.

At the end of argument, the prosecutor described "reasonable doubt" as "something that makes you comfortable with your decision today," so that each member of the jury could "go explain to it to your neighbor next day, conversation, explain the decision." The prosecutor used this theme to revisit the facts of the case in full. The prosecutor then suggested that each of the members of the jury would

explain to his or her neighbor "gosh, we got the instructions about reasonable doubt, and we walked him. Your neighbor's going to be, you did what? And you're going to be very uncomfortable." Trillo's counsel immediately objected that this statement was improper. Although the judge "noted" the objection, the trial court allowed the prosecutor to finish his argument, told him to "relate to the evidence," and did not specifically rule on the objection or admonish the prosecutor. The prosecutor then asserted that he meant to suggest that the members of the jury would "be uncomfortable is because not reasonable for you of the evidence and couldn't explain it [sic] and make it reasonable if you tried." On direct appeal, the California Court of Appeal interpreted the prosecutor's statement to mean that the jurors "should convict because it was not reasonable under the evidence to acquit." Construing the statement in this light, the California Court of Appeal held that it was acceptable prosecutorial commentary.

But this interpretation was an unreasonable application of clearly established federal law. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The state court should have analyzed whether the statement to which Trillo's attorney objected was improper regardless of the prosecutor's intended meaning.

Given this standard, clearly established federal law from the Supreme Court bars the government in a criminal trial from pressuring the jury to convict the defendant. *United States v. Young*, 470 U.S. 1, 18 (1985); *Darden v. Wainwright*, 477 U.S. 168, 179–81 (1986). As we have recognized, "[a] prosecutor may not urge jurors to convict a criminal defendant in order to protect community values,

preserve civil order, or deter future lawbreaking." *United States v. Weatherspoon*, 410 F.3d 1142, 1149 (9th Cir. 2005) (citations omitted).

Well-reasoned decisions from our sister circuits recognize that examples of statements that constitute improper pressure under *Young* include when prosecutors imply that jurors should convict a defendant because failure to do so would endanger their neighbors. *See, e.g.*, *United States v. Johnson*, 231 F.3d 43, 47 (D.C. Cir. 2000) (holding that "the prosecutor's argument in this case improperly suggested that the jury should convict the defendant in order to protect others from drugs"); *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (holding that a prosecutor's "reference to the community's cry for safer streets" was inappropriate).

Under *Young*, a prosecutor may not suggest that jurors should vote to convict a defendant lest that defendant endanger their neighborhood. It follows that jurors should not be urged to vote to convict simply because they might be uncomfortable with a vote to acquit. Thus, we conclude that the California Court of Appeal's determination that the prosecutor's statement was not improper was an unreasonable interpretation of the clearly established principles from *Smith* and *Young*.

## C.

But we do not grant habeas petitions solely because a prosecutor erred. Our aim is not to punish society for the misdeeds of the prosecutor; rather, our goal is to ensure that the petitioner received a fair trial. *Smith*, 455 U.S. at 219. We grant habeas relief for prosecutorial misconduct only when the misconduct prejudiced the petitioner. *Hein*, 601 F.3d at

914. We determine whether the petitioner suffered prejudice by placing the improper comments in the context of the entire trial. To do that, we look to the weight of the evidence submitted against Trillo, the prominence of the erroneous comments in the entire trial, whether the prosecution misstated the evidence, whether the judge instructed the jury to disregard the comments, whether the comment was invited by defense counsel in summation, and whether defense counsel had an adequate opportunity to rebut the comments. *Id.* In examining those suggested areas of concern, we evaluate whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht*, 507 U.S. at 637.

Although the judge did not sustain the objection from Trillo's lawyer to the comment about reactions from the jury's neighbors, there was powerful and overwhelming evidence of Trillo's guilt. Trillo admitted that he had killed the victim, but argued at trial that he had acted in self-defense. However, no witness besides Trillo testified that the victim had a weapon, and emergency personnel did not see any knife near the victim. Moreover, Trillo's testimony about the injury he allegedly suffered was inconsistent. He testified that he was hit in the back by what felt like a punch, but when he turned the only person behind him was the victim, who was still a few feet away. Following the shooting, Trillo fled the scene of the crime and then left California entirely. Not only did the government submit sufficient evidence that Trillo had not acted in self-defense, the government further undermined whatever evidence Trillo submitted that he had acted in self-defense. For example, the government showed that witnesses who supported Trillo had given the police false information, had attempted to contact Trillo, and had withheld information from the police.

The other issues that we consider, following *Hein*, also show that any prejudice Trillo may have suffered was not enough for us to grant him relief. The erroneous unrectified comment did not play a prominent role in Trillo's trial, but instead was a single statement during a closing argument that took twenty pages of transcript after a long criminal trial. *Accord Hein*, 601 F.3d at 916 ("the comments were made in the course of several days of summation after a two-month trial . . . [and the inappropriate comment] appeared in one paragraph of a summation that took up eighty-four pages of the transcript"). Nor did the prosecution actually misstate the evidence. *Id.* at 915.

Therefore, Trillo was not deprived of a fair trial because under all the *Darden* factors recited in *Hein*, we conclude that the prosecutorial misstatement did not have a substantial and injurious effect or influence in determining the jury's verdict, and therefore did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. *See also Hein*, 601 F.3d at 915.

IV.

The next issue we certified for appeal was whether trial counsel was constitutionally ineffective for failing to object to additional remarks made in the prosecutor's argument. Trillo argues that the prosecutor made improper statements to which his trial counsel did not object. Those include references to Trillo removing his shirt, which Trillo argues implied to the jury that he had instigated the initial fight, and references to Trillo's gang connections and criminal history.

Trillo's counsel was not constitutionally ineffective for failing to object to the prosecutorial statements that Trillo had

removed his shirt. Those statements were based on reasonable inferences from the record. *Gray*, 876 F.2d at 1417 ("prosecutors are free to argue reasonable inferences from the evidence"). Testimony established that Trillo's friends who were standing with him had removed their shirts, and a witness described Trillo's neck tattoo, which together reasonably implied that he had removed his shirt. Indeed, on appeal, Trillo now admits that there was a witness who "remotely insinuated that [Trillo] removed his shirt."

Trillo's attorney's failure to object to the government statements about gang connections did not prejudice Trillo's defense. As mentioned above, there was powerful evidence that Trillo had not acted in self-defense, and the trial court reminded jurors that statements made by the attorneys are not evidence. Thus, Trillo's attorney's failure to object did not "undermine confidence in the outcome of the trial," so we refuse to grant habeas relief for ineffective assistance of counsel. *Cheney v. Washington*, 614 F.3d 987, 997 (9th Cir. 2010) (citations omitted).

V.

The last issue for our review is "whether the trial court violated petitioner's Sixth Amendment right to present a meaningful defense by excluding testimony regarding a statement made by a witness to the victim which might have corroborated petitioner's theory of defense." At his trial, Trillo sought to introduce the testimony of a witness who stated that he saw another man approach the victim immediately after the shooting and said "Was it worth it?" According to Trillo, this testimony supported his self-defense theory, because the unidentified man was rhetorically asking the victim why he chose to advance toward Trillo while

armed. The trial court refused to admit this hearsay evidence under California Evidence Code section 1240, which allows the admission of spontaneous statements that "(a) [p]urport[] to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) [were] made spontaneously while the declarant was under the stress of excitement caused by such perception." Cal. Evid. Code § 1240 (West 2014). According to the California Court of Appeal, which affirmed the exclusion of the witness' testimony, the statement was ambiguous, so the trial court did not abuse its discretion in excluding it. In this appeal, Trillo argues that the decision to exclude the evidence was erroneous, and the exclusion prejudiced him.

We do not review whether the decision to exclude the evidence was consistent with state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (explaining that "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus"). Instead, we only determine whether the state evidentiary rule violates the federal Constitution. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("our habeas powers [do not] allow us to reverse [a] conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code . . . The only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process") (internal quotation marks omitted)). The application of state evidentiary rules must be consistent with the right to due process protected by the Fourteenth Amendment, but "do not violate a defendant's constitutional rights unless they infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2008) (alterations and citations omitted). A

decision by a trial court to exclude evidence only violates the Constitution if the evidence is "sufficiently reliable and crucial to the defense." *United States v. Hayat*, 710 F.3d 875, 898 (9th Cir. 2013) (citation omitted). If the evidence does not bear "persuasive assurances of trustworthiness," the trial court's decision to exclude the evidence could not violate due process. *Id.* at 899 (citation omitted).

The exclusion of the witness statement here did not violate due process. There was no evidentiary corroboration at all for the witness statement in Trillo's trial. The trial court excluded the testimony of a single person who would have testified that another man had asked the victim "Was it worth it?" No other witnesses saw or testified to this alleged statement. Indeed, as the California Court of Appeal pointed out, it was not at all clear what "Was it worth it?" meant. Without any corroboration, the trial court's decision to exclude the testimony could not violate the Constitution. *Id.* at 898–99.

**AFFIRMED.**