Filed 9/15/15  P. v. James CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KAILAN JOSHUA JAMES,<br><br>Defendant and Appellant. | C075819<br><br>(Super. Ct. No. 12F08213) |

Defendant Kailan Joshua James went with Justin Valine (the brother of defendant's girlfriend Marissa Valine) and Danny Valine (Justin and Marissa's father) to Kelly McClurg's rural property.[1]  Danny shot and killed McClurg and the three men stole McClurg's marijuana.  A jury convicted defendant of first degree murder (Pen. Code,

---

[1] Because the Valines share a surname, we refer to members of the Valine family by their first names.

1

§ 187, subd. (a)),**2** with an enhancement for a principal being armed (§ 12022, subd. (a)(1)) and a robbery-murder special circumstance (§ 190.2, subd. (a)(17)), and robbery (§ 211). The trial court sentenced defendant to an unstayed term of life without the possibility of parole plus one year. On appeal, defendant contends the People committed misconduct during closing argument and argues his parole revocation fine must be stricken. He also seeks correction or clarification of several items in the abstract of judgment. We modify the judgment to strike the parole revocation fine, direct amendment and correction of the abstract of judgment, and otherwise affirm.**3**

### FACTS

Kelly McClurg lived on rural property in Wilton, where he grew marijuana both inside and outside the house. He kept the front gate to the property locked. McClurg had been in a dispute with defendant and Marissa. McClurg thought they had stolen marijuana from him and had ordered them to stay off his property.

On the night of October 27, 2012, Marissa's father Danny, her brother Justin, and defendant went to McClurg's. Defendant hid out of sight in the rear of the car, or the trunk, so McClurg would not see him. McClurg unlocked the gate and let them on the property. Danny, Justin, and McClurg went inside and talked and drank beer. Danny announced he was going to get cigarettes from the car and left the house. A few minutes later, Danny kicked in the door, walked up to McClurg and shot him in the head, shooting him twice. Defendant ran into McClurg's house and came out carrying a blanket full of marijuana plants and jars. The three men left, breaking through the locked gate on their way out.

---

**2** Further undesignated statutory references are to the Penal Code.

**3** Danny was tried before a separate jury and found guilty of second degree murder with an enhancement for personal discharge of a firearm and theft. Justin pleaded no contest to manslaughter and testified for the People.

After his arrest, defendant spoke with the police, telling detectives the plan was to get marijuana, not to shoot McClurg. When they got to McClurg's, Danny let him out of the trunk and told him to come out when he heard shots. Defendant heard shots and went inside. McClurg was dead and Danny yelled at him and Justin to take the marijuana. Defendant claimed he did not think Danny was going to kill McClurg, but only "gonna like shoot 'em in the knee or somethin'."

Defendant told his friend David Dodd that he, Danny, and Justin were going to McClurg's and "robbing the weed." Dodd explained he considered robbery the same as stealing. A detective testified many people used the term "rob" to describe a burglary.

## DISCUSSION

### I

### *Prosecutorial Misconduct in Closing Argument*

Defendant contends the prosecutor committed misconduct in his rebuttal argument by inviting the jury to consider the reactions of family members to a not guilty verdict. He contends trial counsel's anticipatory objection was sufficient to preserve the issue, and, if it was insufficient, counsel was ineffective.

A. *Background*

During rebuttal argument, the prosecutor told "a little story" to give the jury "perspective." He told the jurors that soon they would be done with the case and would go back to their work and families; they would be asked about the case. He began to recount the evidence in the case. Defendant objected and an unreported bench conference was held. The prosecutor then went "[b]ack to my story," telling the jury that others would ask the jurors about facts of the case, and the jurors would tell them about how defendant told the police he knew Danny was going to shoot the victim. Defendant raised an objection of misstating the evidence and the court told the jury statements of counsel were not evidence. The prosecutor continued:

3

"And you saw Kailan James['s] statement. You heard it. You heard him say that he went there to do a robbery. You heard him say that he knew Danny Valine was going to do that. Those were all the facts. We put them all out there. And then you turn to them and say it was interesting, but we found him not guilty. Really?

"The idea that this young man, this guilty young man tells the police, admits, confesses to a robbery that lead to a murder, but yet he's not guilty of robbery, it makes no sense. It makes no sense at all. That's why this isn't really that tough of a case. It is sad. It is tragic. But it is not hard. He told you what he did.

"Take those facts, put it with the law, and do the right thing. Make the right decision. But understand if you want to know what was really going on in Kailan James['s] mind when he showed up at the house, don't take my word for it. Take his."

Later, defendant put on the record his objection to the prosecutor's "final story, analogy." Counsel contended the argument was improper, explaining: "It appeared to me that what he was saying was that how could you tell your friends that you voted not guilty on this case based on the facts . . . ." The court noted the objection was made before the argument was concluded but it found no issue "based upon how [the prosecutor] ultimately argued it." The court found the argument was not improper, but rather a way to explain the law and the facts.

B. *Law and Analysis*

The People argue defendant has forfeited this contention because he failed to object to the portion of the closing argument that he now contends is misconduct. We disagree. Even if defendant's preliminary objection were deemed insufficient to preserve his misconduct claim, the court's ultimate ruling that the argument was *not* improper demonstrates that further objection by defendant would have been futile. Failure to object is excused under this circumstance. (*People v. Centeno* (2014) 60 Cal.4th 659, 674.) We reach the merits of defendant's claim.

4

" 'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' [Citation.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 771-772.)

"It is, of course, misconduct for a prosecutor to suggest that jurors disregard instructions and consider public opinion in determining the guilt phase of a criminal trial. [Citation.]" (*People v. Morales* (1992) 5 Cal.App.4th 917, 928.) In a criminal trial, the People cannot pressure the jury to convict defendant and "jurors should not be urged to vote to convict simply because they might be uncomfortable with a vote to acquit." (*Trillo v. Biter* (9th Cir. 2014) 769 F.3d 995, 1001.)

In *People v. Shazier* (2014) 60 Cal.4th 109, the jury was tasked with deciding whether Shazier should be confined for treatment as a sexually violent predator (SVP). Our Supreme Court found improper an argument "intended to persuade the jurors that their family and friends would condemn them if they failed to find defendant was an SVP." (*Id*. at p. 144.) The court did not disapprove the "rhetorical use of a hypothetical conversation with nonjurors" that was "simply as an effort to convince the jurors they would have intellectual difficulty justifying or explaining a 'not true' verdict, because such a determination would be illogical and against the credible evidence." (*Ibid*.) Rather, the argument was improper because it focused on the potential *community reaction* to a verdict finding Shazier was not an SVP. "Because the specter of outside social pressure and community obloquy as improper influences on the jurors' fairness and objectivity is so significant, we cannot countenance argumentative insinuations that jurors may confront such difficulties if they make the wrong decision. [¶] The prosecutor must have understood that jurors might interpret his remarks as a warning about the social consequences they would face if they failed to ensure the secure

5

confinement of a dangerous sex offender." (*Id.* at p. 145.)  Indeed, the prosecutor pressed this point by telling the jurors that they would " 'have to explain' " their verdict to their family and friends and would be unable to do so.  (*Ibid.*)

The prosecutor's argument here was different.  Rather than focusing on the community reaction to a not guilty verdict, the argument addressed the *evidence* in the case.  The prosecutor argued defendant's own words established defendant's guilt, and that for a juror to find otherwise would be inexplicable.  The "rhetorical use of a hypothetical conversation with nonjurors" was used only to show that the evidence pointed to guilt and that a not guilty verdict "would be illogical and against the credible evidence."  (*People v. Shazier, supra,* 60 Cal.4th at p. 144.)  This was permissible argument, not misconduct.

## II

### *Parole Revocation Fine*

The court sentenced defendant to life without the possibility of parole on the murder count and added one year for the firearm enhancement.  The six-year term for robbery was stayed pursuant to section 654.  The court imposed a $10,000 restitution fine pursuant to section 1202.4 and imposed and stayed an identical parole revocation fine pursuant to section 1202.45.  Defendant contends, and the People agree, that the parole revocation fine should be stricken because defendant's sentence does not include the possibility of parole.  We agree.

Penal Code section 1202.45 requires assessment of a parole revocation restitution fine "[i]n every case where a person is convicted of a crime and whose sentence includes a period of parole."  Where the only sentence imposed is life without the possibility of parole, there is no parole eligibility and the fine is not applicable.  (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1181.)  Where defendant is also sentenced to a determinate term, however, the fine is required.  (*People v. Brasure* (2008) 42 Cal.4th 1037, 1075.)

6

Here, defendant was sentenced to a determinate six-year term for robbery, but that term was stayed pursuant to section 654.  In that situation the parole revocation fine is not applicable because "section 654 prohibits the use of a conviction for any punitive purpose if the sentence on that conviction is stayed" (*People v. Pearson* (1986) 42 Cal.3d 351, 361), and the section 1202.45 fine is considered punitive for ex post facto purposes (*People v. Cruz* (2012) 207 Cal.App.4th 664, 673, fn. 8).  We will modify the judgment to strike the parole revocation restitution fine and direct amendment of the abstract to remove it.

### III

### *Corrections to Abstract of Judgment*

Defendant requests two corrections to the abstract of judgment.  First, the abstract does not reflect that the court order for restitution to the victims was a joint and several obligation of all defendants.  The People agree the abstract should be corrected.  We direct the abstract corrected to add that liability for the restitution order is joint and several.

Second, the abstract for the determinate term for robbery indicates the sentence is six years, shown in parenthesis.  Judicial Council Form CR-290.1, on which this single count determinate term is properly reflected, does not contain a separate area to designate a sentence as stayed.  Defendant contends the use of parenthesis to indicate the sentence is stayed is ambiguous; however, the use of parenthesis to show a stayed sentence is the customary practice on abstracts of judgment and readily understood.  Further, as the People point out, the aggregate sentence is correctly listed on that same page as omitting the stayed term.  No change is required.

**DISPOSITION**

The judgment is modified to strike the parole revocation fine. The clerk of the superior court is directed to prepare an amended and corrected abstract of judgment (1) striking the parole revocation fine, and (2) indicating the restitution order is joint and several, and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

                                                      _____DUARTE_____ , J.

We concur:

_____BLEASE_____ , Acting P. J.

_____MAURO_____ , J.