**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SHIU LUNG LEUNG, AKA Steve
Leung, Chao-Lung Liang,
*Defendant-Appellant*.

No. 13-10242

D.C. No.
3:09-cr-00110-
SI-6

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, Senior District Judge, Presiding

Argued and Submitted
February 11, 2015—San Francisco, California

Filed August 6, 2015

Before: Sidney R. Thomas. Chief Judge, M. Margaret
McKeown, Circuit Judge and Virginia M. Kendall,[*] District
Judge.

Opinion by Judge McKeown

[*] The Honorable Virginia M. Kendall, District Judge for the U.S. District Court for the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming the district court's denial of a motion for new trial and request for an evidentiary hearing, the panel held that the defendant was not entitled to a new trial or evidentiary hearing based on a juror's post-verdict affidavit alleging that other jurors discussed the evidence against him and made up their minds about his guilt before the start of deliberations.

The panel declined to embrace the defendant's theory that Fed. R. Evid. 606(b), which shields against the efforts of litigants to overturn verdicts based on the real or perceived flaws of the juries that decided their cases, provides leeway for a court to delve into the internal affairs of the jury simply because the discussions took place before deliberations commenced.

### COUNSEL

Dennis P. Riordan (argued) and Donald M. Horgan, Riordan & Horgan, San Francisco, California, for Defendant-Appellant.

Adam D. Chandler (argued), James J. Fredericks, and Kristen C. Limarzi, Attorneys; Brent Snyder, Deputy Assistant Attorney General; William Baer, Assistant Attorney General;

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Peter K. Huston and Micah L. Wyatt, Attorneys, United States Department of Justice, Washington, D.C., for Plaintiff-Appellee.

**OPINION**

McKEOWN, Circuit Judge:

The prohibition on admitting juror testimony to challenge the validity of a verdict is longstanding. *Warger v. Shauers*, 135 S. Ct. 521, 526 (2014). It has its roots in an eighteenth-century English case "in which Lord Mansfield held inadmissible an affidavit from two jurors claiming that the jury had decided the case through a game of chance." *Id.* In modern jurisprudence, this principle is found in Federal Rule of Evidence 606(b), which is a powerful shield against the efforts of litigants to overturn verdicts based on the real or perceived flaws of the juries that decided their cases. Indeed, the Supreme Court has interpreted the Rule to bar testimony regarding jurors' drug use, "insanity, inability to understand English, and hearing impairments." *Id.* at 530.

In keeping with these precedents, we hold that Shiu Lung Leung was not entitled to a new trial or evidentiary hearing based on a juror's affidavit alleging that other jurors discussed the evidence against him and made up their minds about his guilt before the start of deliberations. We decline to embrace Leung's theory that Rule 606(b) provides leeway for a court to delve into the internal affairs of the jury simply because the discussions took place before deliberations commenced.

## BACKGROUND

Shiu Lung Leung, an executive at the Taiwanese company AU Optronics Corporation, was charged in 2010 with violating the Sherman Antitrust Act, 15 U.S.C. § 1, for his role in fixing the prices of Thin-Film Transistor, Liquid Crystal Display panels. Leung faced trial as one of seven individual and corporate co-defendants. The jury convicted four and acquitted two of Leung's co-defendants, but could not reach a verdict on the charge against him. The government elected to re-try him, and he was convicted at the second trial.

Shortly before his sentencing, Leung filed a motion for a new trial and a request for an evidentiary hearing. The portion of the motion relevant here rested solely on an affidavit from one juror. According to the affidavit, several jurors violated the court's instructions not to discuss the case before final deliberations by regularly talking about the evidence during breaks in the trial. The juror also opined that, before the jury began deliberations, at least three other jurors "had already made up their minds that the defendant was guilty."

The district court ruled that the affidavit was inadmissible under Rule 606(b). The court denied the motion for a new trial without an evidentiary hearing. Leung was sentenced to twenty-four months' imprisonment.

## ANALYSIS

The central issue in this appeal is the admissibility of the juror affidavit offered in support of Leung's motion for a new

trial.[1]  Leung contends that the affidavit is admissible under Rule 606(b) because juror testimony about discussion of the evidence before charging does not intrude on the internal affairs of the jury, but instead demonstrates juror dishonesty and bias during voir dire.  The government responds that Leung's motion for a new trial should have been rejected as untimely and that its contents were inadmissible in any event. Although we reject the government's timeliness argument, we affirm the district court because Rule 606(b) bars consideration of the affidavit.

As a threshold matter, Federal Rule of Criminal Procedure 33(b)(2) provides that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  The government contends that Leung's motion was time-barred because it was filed nearly four months after the jury's verdict.

The government's position, however, does not square with the Supreme Court's clarification in *Eberhart v. United States* that Rule 33 is "nonjurisdictional."  546 U.S. 12, 19 (2005).  This means that the 14-day deadline is subject to extension under Federal Rule of Criminal Procedure 45(b)(2). *Id.*  Following trial, the district court told defense counsel to "go ahead and file your [new trial] motions whenever you want to," suggesting that they be filed "substantially in

---

[1] Leung's co-defendants from the first trial appealed, raising substantive challenges to the application of the Sherman Act to their conduct.  In *United States v. Hsiung*, 778 F.3d 738 (9th Cir.), *cert. denied* 135 S. Ct. 2837 (2015), we rejected these arguments and affirmed the convictions. Leung's identical challenges raised in connection with his second trial are controlled by our opinion in *Hsiung*, and we affirm on the same grounds without the need for further discussion.

advance" of the sentencing hearing. Although the judge later referred to the motions as "late," she declined to find the motions untimely and considered the merits of each. In view of the chronology and the record, we conclude that the district court granted an extension to file the motion for a new trial, albeit open-ended, and that the motion was timely filed.

We now turn to the question of whether the juror affidavit entitled Leung to a new trial or an evidentiary hearing. This question hinges on Federal Rule of Evidence 606(b). Subject to various exceptions not applicable here,[2] Rule 606(b) provides:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.

Our analysis of Rule 606(b) is guided by two Supreme Court cases: *Tanner v. United States*, 483 U.S. 107 (1987), and *Warger v. Shauers*, 135 S. Ct. 521 (2014). In *Tanner*, the Court addressed the admissibility of a juror affidavit asserting that jurors drank alcohol, smoked marijuana, ingested cocaine, conducted drug deals, and periodically slept throughout a complex criminal trial. 483 U.S. at 115–16.

---

[2] The Rule expressly permits juror testimony regarding "whether: (A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form." Fed. R. Evid. 606(b)(2).

The Court began its analysis by noting that "the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict." *Id.* at 117. Rule 606(b) was not an innovation, but was instead "grounded in the common-law rule against admission of juror testimony to impeach a verdict." *Id.* at 121.

Although an exception to Rule 606(b) permits inquiry into whether "extraneous influences" tainted the verdict, juror testimony regarding the jury's "internal processes" is categorically barred. *Id.* at 120–21. The Court emphasized that the internal/external distinction is "not based on whether the juror was literally inside or outside the jury room when the alleged irregularity took place." *Id.* at 117. Rather, the salient inquiry is the "nature of the allegation." *Id.*

In *Warger*, the Court considered a juror's allegations that, during deliberations, another juror admitted to harboring bias against one of the parties. The Court rejected the argument that Rule 606(b) did not apply to the juror's proffered testimony because ferreting out juror bias and dishonesty "[does] not involve an 'inquiry into the validity of the verdict.'" 135 S. Ct. at 528. To the contrary, Rule 606(b) "simply applies" in any proceeding in which a party seeks to set aside a jury verdict. *Id.* The Court then held that Rule 606(b)'s bar on jury deliberations evidence does not permit an exception for testimony about juror bias or dishonesty during voir dire, abrogating our decision in *Hard v. Burlington Northern Railroad*, 812 F.2d 482 (9th Cir. 1987).[3]

---

[3] *Hard* held that "statements" made during deliberations "which tend to show deceit during voir dire are not barred by [Rule 606(b)]." 812 F.2d at 485.

The Court noted that while jurors can (and should) report such information to the court during trial, the plain text and history of Rule 606(b) dictate that a party seeking to impeach a verdict cannot resort to juror testimony about any statement made or incident that occurred "during deliberations." *Warger*, 135 S. Ct. at 530.

Several key principles emerge from the Court's interpretation of Rule 606(b) in these two cases:

- The Rule applies in any proceeding that involves an inquiry into "the validity of the verdict," however that inquiry is framed by the litigants.

- The Rule bars juror testimony about the jury's "internal processes," whether the claimed irregularity took place inside or outside the jury room.

- The Rule imposes a nearly categorical bar on juror testimony about statements or events "during the jury's deliberations."[4]

In both *Warger* and *Tanner*, the Court recognized that Rule 606(b) prevents courts from considering some conduct that does not reflect the solemn duty undertaken by jurors. For example, the Rule prohibits testimony as dramatic as jurors' drug abuse, "insanity, inability to understand English,

---

[4] In *Warger*, the Court noted the possibility that, in some circumstances, it might be unconstitutional to prohibit the introduction of juror testimony revealing "juror bias so extreme that, almost by definition, the jury trial right has been abridged." 135 S. Ct. at 529 n.3. As in *Warger*, "[w]e need not consider the question, however, for those facts are not presented here." *Id.*

and hearing impairments . . . ." *Warger*, 135 S. Ct. at 530. Juror testimony cannot be used to impeach a verdict even when a feckless jury decides the parties' fates through a coin flip or roll of the dice. *See id.* at 526 (citing *Vaise v. Delaval*, (1785) 99 Eng. Rep. 944 (K.B.)).

The notion that egregious juror conduct will not necessarily result in relief from the verdict may seem antithetical to our system of due process. The Rule, however, exists for good reason—it protects jurors from harassment and maintains the integrity and finality of jury verdicts. While persistent inquiry into internal jury processes could "in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior," our very system of trial by jury might not "survive such efforts to perfect it." *Tanner*, 483 U.S. at 120.

The affidavit in issue represents precisely such an effort. Like the proffered testimony in *Tanner*, the testimony attempts to shed light on the internal affairs of the jury. In seeking a new trial on the grounds that jurors made up their minds prematurely and discussed the evidence before the start of deliberations, Leung requests a declaration that the jury that decided his case failed to review the evidence with an open mind prior to being charged. But parsing how jurors considered the evidence or their mental states while hearing testimony is exactly what *Tanner* and the plain text of Rule 606(b) seek to prevent. We cannot countenance this effort to intrude upon jurors' "mental processes concerning the verdict." *See United States v. Davis*, 960 F.2d 820, 828 (9th Cir. 1992) (describing as "meritless" a motion for a new trial based on a juror's statement in an interview that "[f]rom the first day I knew [the defendant] was guilty" (first alteration in original)).

Leung argues, however, that we should consider the Simms affidavit not as evidence of the internal affairs of the jury, but as evidence of juror bias and dishonesty during voir dire. Not only is this a revival of the sentiment in our now-abrogated *Hard* case, the argument is not borne out by the affidavit.[5] Leung posits that the affidavit supports the inference that jurors made false representations during voir dire. He points out that no juror responded when, during voir dire, the district court asked: "Is there anybody here who couldn't promise not to communicate about the case until it's over?" Leung reasons that because some jurors did in fact discuss the evidence before the case ended, they must have concealed their intent to "br[eak] their promise and def[y] the court's directive" during voir dire. Taking this logic a step further, Leung contends that he was denied a fair and impartial jury because the jurors' alleged deception denied him the opportunity to exercise a "valid . . . challenge for

---

[5] Rule 606(b)'s categorical bar on juror testimony regarding any "statement made or incident that occurred during the jury's deliberations" does not expressly encompass the pre-deliberation time period. In *United States v. Henley*, we stated that we "need not decide" whether a juror may testify that other jurors revealed deceit or bias before deliberations, but noted that the Rule's "primary purpose—the insulation of jurors' private deliberations from post-verdict scrutiny—would not be implicated by permitting" such testimony. 238 F.3d 1111, 1120–21 (9th Cir. 2001); *see also Williams v. Price*, 343 F.3d 223, 236 (3d Cir. 2003) (noting that "if the other jurors' alleged comments did not occur during deliberations and if [the juror's] testimony about those comments" demonstrated bias or deceit during voir dire, "it could be argued that [the] testimony must be allowed by Rule 606(b)"). Admitting such evidence, however, may impermissibly intrude upon jurors' "mental processes concerning the verdict," Fed. R. Evid. 606(b), and butt up against *Warger*'s suggestion that the two safeguards against juror bias are bringing it to light "before the verdict is rendered" or seeking a new trial on the basis of "nonjuror evidence." 135 S. Ct. at 527. Because the Simms affidavit contains no evidence of bias or deception, we need not resolve that tension here.

cause" before the start of the trial. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

Leung's argument is not an accurate characterization of the affidavit. The affidavit does not contain any evidence of juror deceit or bias; at most it suggests that some jurors failed to follow through on their promise to follow all the court's instructions. Nothing in the affidavit indicates that any juror had dishonest intentions at the time of that commitment. That some jurors may not have complied with each instruction does not support the inference that they lied or concealed bias.

Accepting Leung's invitation to cast every instance of juror misconduct as admissible evidence of dishonesty or bias would have staggering consequences for the finality of jury verdicts. Even the most trivial missteps would become fair game for a motion for a new trial. For example, standard jury instructions in California admonish jurors not to "take their notebooks out of the courtroom or jury room," and to keep cellular phones "turned off" during trial. Judicial Council of California Criminal Jury Instructions 101–02. Leung's position would necessarily require the court to treat jurors who take their notepads home at the end of the day or sneak a peek at their email during trial as having lied or concealed bias during voir dire.[6] We decline to automatically attribute such common mistakes to jurors' hidden intent to "break their

---

[6] To the extent Leung argues that certain pre-deliberation discussions pose a particularly troublesome form of misconduct because they have the potential to calcify a juror's views of the case before formal deliberations begin, this type of speculation is exactly the type of inquiry into a "juror's mental processes concerning the verdict" that Rule 606(b) proscribes.

promise and defy the court's directive" rather than mere human fallibility.

Indeed, interpreting every act of juror misconduct as evidence that jurors lied would also cast serious doubt on the scope of the rule announced in *Tanner*. Taken to its logical conclusion, Leung's argument means that *Tanner* hinged on the fact that the district court in that case did not instruct jurors to abstain from alcohol and drugs during trial. Had the court issued such a specific instruction, then the juror testimony would have been admissible to show that a juror lied when he promised to teetotal. Nothing in *Tanner* suggests that its resounding condemnation of examining juries' internal affairs was based on such a shaky foundation.

We hold that during a proceeding to set aside a verdict, juror testimony that other jurors engaged in premature deliberations or made up their minds about the case before deliberations began is inadmissible to demonstrate that the jury engaged in flawed processing of the evidence. Such testimony improperly implicates the internal affairs of the jury during an inquiry into the "validity of the verdict." *Warger*, 133 S. Ct. at 528.

In closing, we emphasize that rules governing juror conduct during trials exist for good reason. The instruction not to discuss the case before deliberations is an important one and is often given multiple times during the trial because human nature leads jurors to want to talk about what they have been listening to while held captive in the jury box. A violation of those instructions may be remedied if the juror who overheard the conversations brings the issue to the trial judge during trial. In other instances, bailiffs or other court personnel may witness and report the chatter. With

appropriate notice, the trial court has broad discretion as to how to correct the violation, whether through giving additional jury instructions, dismissing jurors, or declaring a mistrial. Even when evidence of misconduct comes to light after the trial, the parties can attempt to produce nonjuror testimony about the alleged infractions. None of these avenues implicates the restrictions of Rule 606(b). The post-verdict affidavit, however, is too little, too late.

## CONCLUSION

Once a jury has pronounced its judgment, Rule 606(b) helps ensure jurors' ability to "separate and melt anonymously into the community from which they came." *United States ex rel. McCann v. Adams*, 126 F.2d 774, 776 (2d Cir.) (L. Hand, J.), *set aside on other grounds*, 317 U.S. 269 (1942). In light of the Rule's prohibition on juror testimony regarding the internal affairs of the jury, Leung was not entitled to a new trial or evidentiary hearing on the basis of the post-verdict juror affidavit.

**AFFIRMED.**