**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JASON RUTAN PAPPAS, | No. 16-55191 |
| Petitioner-Appellant, | D.C. No. 5:14-cv-01994-CJC-SS |
| v. | |
| AMY MILLER, Warden, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted June 5, 2018
Pasadena, California

Before: WARDLAW and PAEZ, Circuit Judges, and CHHABRIA,** District
Judge.

Jason Rutan Pappas ("Pappas") appeals the district court's denial of his 28

U.S.C. § 2254 habeas corpus petition. He argues that his due process right to a fair

trial was violated by prosecutorial misconduct during closing argument and his

---

&ast; This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

&ast;&ast; The Honorable Vince Chhabria, United States District Judge for the
Northern District of California, sitting by designation.

constitutional right to a fair trial by impartial jurors was violated by juror misconduct. We review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). We have jurisdiction under 28 U.S.C. §§ 1291 and 2245, and we grant in part and deny in part.

1. On his certified ground, Pappas argues that the prosecutor made several inflammatory statements during closing argument that deprived him of his right to a fair trial, including improper calls to the jury to protect the community; appeals to the jury's sympathies for the victim; and misstatements of the law. We acknowledge that some of the prosecutor's comments during closing argument constituted prosecutorial misconduct. *See Deck v. Jenkins*, 814 F.3d 954, 980 (9th Cir. 2014); *Trillo v. Biter*, 769 F.3d 995, 1001 (9th Cir. 2014). However, not all prosecutorial misconduct rises to the level of a due process violation. "The relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). We must defer to the California courts' conclusion that the prosecutor's comments during closing argument here did not so taint the trial as to violate due process, unless that conclusion was either contrary to, or an objectively unreasonable application of, clearly established federal law or based on an unreasonable determination of material fact. *See* 28 U.S.C. § 2254(d). In addition,

2

a habeas petitioner is not entitled to relief based on trial error unless that error was prejudicial under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Trillo*, 769 F.3d at 1001 (9th Cir. 2012) (quoting *Brecht*, 507 U.S. at 637).

In light of the evidence of Pappas's guilt, we conclude that the prosecutor's improper remarks did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quotation omitted). As the California Court of Appeal explained, the only issue at trial was whether Pappas had the requisite mental state for implied malice second-degree murder. There was significant evidence that Pappas knew that driving under the influence while evading the police was dangerous. Pappas's blood-alcohol level was .25%, three times above the legal limit; he drove at speeds upwards of eighty miles per hour in thirty-five miles per hour zones while being pursued by the police; and he ran a red light during the pursuit. Prior to the incident, Pappas had been convicted of driving under the influence in 2007 and arrested for—but not charged—with driving under the influence in 2004. At the time of the 2007 conviction, he expressly affirmed that he knew and understood that driving while under the influence was extremely dangerous to human life. Finally, Pappas had previously caused an accident while evading the police in 1997, the very circumstance underlying Pappas's conviction. Thus, "the State's evidence of guilt was, if not

3

overwhelming, certainly weighty." *Id.* at 639. Therefore, the prosecutor's statements during closing argument did not "substantially influence" the jury's verdict. *Id.*

2. We grant Pappas's motion to expand the Certificate of Appealability ("COA") to include a second habeas ground: whether there was juror misconduct. *See* Ninth Cir. R. 22-1(e) (providing that when a petitioner briefs an uncertified issue, we construe the briefing as a motion to expand the COA). Pappas argues that his Sixth Amendment constitutional right to an impartial jury was violated because one of the jurors might have been a member of Mothers Against Drunk Driving ("MADD"), and when he raised this issue to the trial court, its "fact-finding process [was] . . . defective" under § 2254(d)(2). The district court, in affirming the Magistrate Judge's findings, held that the state trial court's inquiry into Pappas's claims of juror misconduct was sufficient. Because "jurists of reason" might find that conclusion "debatable," we grant the motion. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

A state defendant has a federal constitutional right to an impartial jury. *See Turner v. State of La.*, 379 U.S. 466, 472 (1965) (Sixth Amendment); *Irvin v. Dowd*, 366 U.S 717, 722 (1961) (due process); *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir. 1986). "One touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before

4

it.'" *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). There are three recognized forms of juror bias: (1) "actual bias, which stems from a pre-set disposition not to decide an issue impartially"; (2) "implied (or presumptive) bias, which may exist in exceptional circumstances where, for example, a prospective juror has a relationship to the crime itself or to someone involved in a trial, or has repeatedly lied about a material fact to get on the jury"; and (3) "'so-called *McDonough*-style bias, which turns on the truthfulness of a juror's responses on voir dire' where a truthful response 'would have provided a valid basis for a challenge for cause.'" *United States v. Olsen*, 704 F.3d 1172, 1189 (9th Cir. 2013) (quoting *Fields v. Brown*, 503 F.3d 755, 766–67 (9th Cir. 2007) (en banc)). Pappas's allegations raise issues of actual bias and *McDonough*-style bias.[1]

Pappas made a strong showing of juror misconduct under *McDonough*. It was undisputed that most, if not all, of the prospective jurors had been questioned during voir dire regarding their affiliation with MADD or similar organizations. *See McDonough*, 464 U.S. at 556 (holding that a juror's untruthful responses

---

[1] The California Court of Appeal issued the last reasoned decision on the MADD juror misconduct claim, electing to "defer to the trial court's finding that no jury misconduct occurred because it was supported by sufficient evidence." However, "[b]ecause that decision affirmed the trial court and adopted one of the reasons cited by the trial court," analysis of this claim "will necessarily include discussion of the trial court's decision as well." *Lewis v. Lewis*, 321 F.3d 824, 829 (9th Cir. 2003).

5

during voir dire may give rise to a constitutional claim of juror misconduct). An affirmative response "would have provided a valid basis for a challenge for cause." *Id.* The trial court and defense counsel both acknowledged that an earlier venire member, who admitted she was a member of MADD, was dismissed for cause. Further, the trial court expressed strongly held views about the need to gauge the prospective jurors' views on drinking and driving. Thus, there is little doubt that another challenge for cause on the same ground would have been successful.

In addition, if a juror was (or had been) a member of MADD and did not disclose that membership when asked, this would have shown "actual bias." *Olsen*, 704 F.3d at 1189. Pappas presented substantial evidence that a juror may have dishonestly concealed an affiliation with MADD, including declarations from two jurors and the live testimony of one juror.

The Sixth Amendment requires that jurors in a criminal case base their verdict solely on the evidence presented at trial. *See Turner*, 379 U.S. at 472–73. In *Smith v. Phillips*, the Supreme Court observed that "[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." 455 U.S. at 215. The *Smith* Court went on to hold that "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to

6

prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id*. at 217.

Although we clarified in *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998), that due process does not mandate a formal evidentiary hearing whenever juror bias is alleged, we held that

> [a] court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances. An informal in camera hearing may be adequate for this purpose; due process requires only that all parties be represented, and that the investigation be reasonably calculated to resolve the doubts raised about the juror's impartiality.

*Id*. at 974–75 (citations omitted).

Despite a clear indication of a violation of Pappas's Sixth Amendment right to a fair trial, the state trial court did not allow Pappas to subpoena the MADD membership records to determine if any juror who did not agree to be contacted was a MADD member because the trial judge was concerned this would be an improper invasion of juror privacy. However, allowing Pappas to subpoena MADD's records would have been minimally invasive to the jurors' privacy rights because the trial judge could have performed an in camera review of MADD's response to the subpoena and, therefore, not revealed any juror names or information to counsel or Pappas.

Instead, the trial court based its finding on an incomplete set of facts. In holding that Pappas was not entitled to a new trial, the trial court reasoned, "there's

7

not enough evidence for me to grant a mistrial or a new trial, rather, because I don't know based on what I've heard whether any of the jurors were members or affiliated with MADD or not." Contrary to the dissent's assertions, the trial court deemed the juror who provided live testimony credible, explaining that she "is a decent honorable person[,]" and the trial court had "no doubt" that her assertion that "something was said about MADD somewhere by a juror probably" was true. Instead, the trial court's finding was premised on the erroneous assumption that it could not definitively determine whether there was a juror who was or had been a member of MADD. But the facts show the trial court could have definitively concluded whether a juror was (or had been) a MADD member because MADD complied with the initial subpoena for juror membership in this case, and there is no reason to believe that MADD would have declined to respond to a second subpoena for the same information.

We therefore hold that Pappas presented sufficient evidence of juror bias to warrant an evidentiary hearing. The state court's factual determination was unreasonable under § 2254(d)(2) because "the fact-finding process [was] itself defective," *Taylor*, 366 F.3d at 1001, and the state court's denial of an opportunity to properly develop the record "goes to a material factual issue that is central to

8

petitioner's claim." *Id*. Accordingly, we reverse and remand to the district court for an evidentiary hearing on Pappas's juror misconduct claim.[2]

**GRANTED IN PART, DENIED IN PART, AND REMANDED FOR AN EVIDENTIARY HEARING.**

---

[2] Although neither party raised Rule 606(b), and thus on appeal it's waived, the district court need not rely upon evidence precluded by Rule 606. All that need be done is to subpoena MADD records for the relevant time, compare them to names of jurors who deliberated, and ascertain the response to voir dire for any juror who appears on the MADD records. This is readably doable either through available records or motion.

*Pappas v. Miller*, No. 16-55191

FILED

OCT 23 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CHHABRIA, District Judge, concurring in part and dissenting in part:

## I.

Notwithstanding the prosecutor's inappropriate statements at closing and the trial judge's failure to respond adequately to that misconduct on the spot, I agree with the majority that Pappas is not entitled to habeas relief on his claim of prosecutorial misconduct.

Pappas is correct that the California Court of Appeal made a factual error in rejecting the prosecutorial misconduct claim. In explaining why the evidence of implied malice at trial was so strong that it rendered the prosecutor's misconduct harmless, the Court of Appeal said Pappas had a prior conviction for driving both recklessly and under the influence, which led to an admonition by the sentencing court (and acknowledgement by Pappas) that driving under the influence could cause someone to be killed. The Court of Appeal described this conviction as having taken place twelve years before the current offense. In fact, there were two convictions – a conviction twelve years prior for evading the police while driving (which resulted in a collision), and a conviction one year prior for driving under the influence. It was after this more recent conviction that Pappas received the admonition and acknowledged that he could kill someone if he drove drunk again.

Pappas argues that this erroneous recitation of his criminal history by the Court of Appeal was a factual error that should have triggered de novo review of the prosecutorial misconduct claim pursuant to 28 U.S.C. § 2254(d)(2). But a state court's factual error does not trigger de novo review unless the state court "plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a *material* factual issue that is central to petitioner's claim." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) (emphasis added), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014). The erroneous description of Pappas's prior convictions was not "material." *Cf. id.* at 1001-14; *Campos v. Stone*, 201 F. Supp. 3d 1083, 1095-97 (N.D. Cal. 2016). If anything, the misstatement by the Court of Appeal undersold the strength of the evidence of implied malice – the fact that Pappas had received the admonition one year before the current offense, rather than twelve, meant that the admonition was fresher in his mind than the Court of Appeal assumed. And had the Court of Appeal described Pappas's prior convictions accurately, the general takeaway about his state of mind would have been essentially the same: from his past experiences, Pappas was on notice that it is dangerous to take the police on a car chase and that it is dangerous to drive drunk – which means he would have known that it is especially dangerous to do both at the same time.

Because there was no material factual error, any claim for habeas relief based on prosecutorial misconduct should be analyzed under 28 U.S.C. § 2254(d)(1), which requires us to ask whether the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." The Court of Appeal's conclusion that the prosecutor's improper statements at closing were harmless was not contrary to, or an unreasonable application of, clearly established federal law. As the Court of Appeal noted, the evidence of implied malice was "overwhelming." The most probative of this evidence was that Pappas decided to lead the police on a high-speed chase with a .25 percent blood alcohol content and a passenger in the car. Additionally, Pappas had acknowledged at his sentencing a year prior that if he drove drunk again he could kill someone. In light of this evidence, a fairminded jurist could conclude that the prosecutor's improper statements at closing likely did not affect the verdict. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).[1]

---

[1] Pappas's claim is premised, at least in part, on his contention that the Court of Appeal concluded that the *only* evidence of implied malice was the prior conviction and did not consider any of Pappas's conduct during the current offense. Although the opinion is somewhat ambiguous on this point, the better reading is that the state court concluded that all the evidence presented at trial, "includ[ing]" but not limited to Pappas's criminal history, strongly supported the jury's finding of implied malice. To the extent there is any ambiguity, AEDPA "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam); *see also Taylor*, 366 F.3d at 1000; *Campos*, 201 F. Supp. 3d at 1092-94.

3

## II.

I also concur in the decision to grant the certificate of appealability on the juror misconduct claim. And I agree that the trial court should have done a better job handling the investigation into whether a juror had concealed her membership in Mothers Against Drunk Driving ("MADD"). Nonetheless, although it's a close question on which reasonable minds can differ, I dissent from the decision to remand for an evidentiary hearing pursuant to 28 U.S.C. § 2254(d)(2). On these peculiar facts, and in light of the incomplete record we have been given, I cannot conclude that the trial judge's investigation was so shoddy as to rise to the level of a "defect in the state-court fact-finding process" – particularly because it seems quite unlikely, based on the limited record we have, that the jury included a member of MADD. *Taylor*, 366 F.3d at 1001; *see also Jones v. Harrington*, 829 F.3d 1128, 1136 (9th Cir. 2016). Moreover, even if the jury did include a member of MADD, it is not at all clear that Pappas would be entitled to habeas relief.

## A.

The allegation that a juror from Pappas's trial was a member of MADD came from Juror 1, who claimed after trial that another juror – an "elderly" woman juror – made a passing reference to her membership in MADD during deliberations. But it appears from the record that Juror 1 was someone whose credibility, or at least her ability to perceive things accurately, could legitimately be questioned.

4

By the time she made her allegations about MADD membership, Juror 1 had already accused a different juror – in fact arguably all the other jurors – of bias. During deliberations, she sent the trial judge a note saying, "I need to speak to you ASAP." When the trial judge met with her on the record, she accused a male juror of being biased (by which she appeared to mean that he went into deliberations with his mind already made up). She claimed this juror had "tainted the rest of the jurors, because they're not willing to listen to other people's concerns . . . ." Juror 1 went on to say that she felt personally intimidated by this juror, and she believed another juror was intimidated by him as well. She also said (somewhat contradictorily) that the other jurors had already made up their minds and that she was feeling pressured by them. But after all that, Juror 1 stated that she had no problem continuing deliberations, "because I am standing my ground. I am not – nobody is pushing me around." The trial judge then spoke with the foreperson on the record, inquiring whether Juror 1 was being intimidated and whether the deliberations were still proceeding productively. The foreperson said that Juror 1's "feelings are very tender" but insisted that she did not appear to be intimidated.

After the verdict, Juror 1 spoke with defense counsel's investigator multiple times, as a result of which defense counsel called her to testify at a post-trial hearing. At the hearing, she made a variety of allegations about the jury's conduct. She alleged that the other jurors pressured her to vote guilty. She alleged that she never

actually voted guilty in the jury room, instead merely saying "whatever" when asked for her vote. She alleged that she was upset with the prosecution for charging Pappas with murder and not the lesser included offense of manslaughter (though when the prosecutor read from a news article quoting Juror 1 saying this to a reporter after the trial, Juror 1 denied that she had ever made those statements). She alleged that an elderly woman juror made reference to her MADD membership. And she alleged that, when the jury was polled in the courtroom after the jury's verdict was announced, she hung her head and mumbled, "I guess guilty." This last allegation is belied by the trial transcript, which reflects that she said "yes" when asked if she had voted guilty. Later, the trial judge described Juror 1 as "very emotionally distraught."

Based on Juror 1's statements and conduct, the trial judge would almost certainly have been justified in concluding that her allegation that an elderly woman juror was a MADD member lacked credibility and declining to investigate it further. *See Tracey v. Palmateer*, 341 F.3d 1037, 1038-45 (9th Cir. 2003); *United States v. Angulo*, 4 F.3d 843, 847 (9th Cir. 1993). This alone is a reason to be cautious about granting habeas relief based on the assumed bias of the alleged MADD member.

It's also worth noting that the testimony given by Juror 1 about statements made during the jury's deliberations, their effects on jurors' votes, and jurors' mental processes in connection with the verdicts – including the alleged reference by an elderly woman juror to her MADD membership – was likely inadmissible and

6

therefore could not have formed the basis for a new trial motion. This is yet another reason to be cautious before relying on Juror 1's testimony as the primary basis for habeas relief. Cal. Evid. Code § 1150; *see* Fed. R. Evid. 606(b); *Warger v. Shauers*, 135 S. Ct. 521, 525-30 (2014); *United States v. Leung*, 796 F.3d 1032, 1035-38 (9th Cir. 2015); *Fields v. Brown*, 503 F.3d 755, 778 (9th Cir. 2007) (en banc) (citing *Sassounian v. Roe*, 230 F.3d 1097, 1108-09 (9th Cir. 2000)); *see also Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 864-68 (2017); *Estrada v. Scribner*, 512 F.3d 1227, 1237 & n.10 (9th Cir. 2008).

The further investigation that the trial judge did allow – while not particularly thorough or methodical – primarily served to rebut Juror 1's allegation that an elderly woman juror stated that she was a member of MADD. The trial court contacted the six other women who had been on the jury and sought their consent to be contacted by the lawyers in Pappas's case. Four consented, and spoke with both the prosecutor and Pappas's lawyer. The prosecutor obtained affidavits from these four jurors. Although these affidavits are not in the record before us, it appears from the trial judge's description of them that none of the four women recalled a woman juror making reference to her MADD membership. Three apparently did not remember any reference to MADD at all. A fourth said that someone had mentioned MADD, but referred to the organization as "they," not "we." According to the trial judge's description of her affidavit, this juror asserted that she "was not left with the

7

impression that this juror [who made the comment] was affiliated with MADD" and had she "been left with the impression that this juror was affiliated with MADD, it would have raised red flags as the jurors were asked about their relationship with MADD during jury selection."[2]

It also appears from the transcript (although again we haven't been given direct evidence of this) that defense counsel subpoenaed MADD for membership records, and that MADD provided an affidavit from a MADD representative for the trial judge to review in chambers. From this, the trial judge appears to have confirmed that these four women jurors were not members of the organization.

Perhaps the trial judge should have agreed to disclose the identities of the two other women jurors. Or perhaps he should have protected their confidentiality but found a way to check their names against whatever information MADD was willing to provide him for review in chambers. But the trial judge's decision not to further investigate these two jurors was probably of no consequence, at least if Pappas's assertions on direct appeal are to be believed. On direct appeal, Pappas did not argue

---

[2] In describing his conversations with the four women jurors who had agreed to be contacted, Pappas's lawyer told the judge that one juror "had a recollection of someone saying there was a MADD member – saying that they were a MADD member during jury voir dire and that they were left on the jury." However, when the trial judge later described the four women jurors' affidavits, he did not describe any of the women as having made such a statement in their declarations, which strongly suggests that this assertion by defense counsel never made it into the juror's affidavit, which means it has no evidentiary value.

8

that one of the two "missing" jurors was biased. He seemed to argue that the allegedly biased MADD member was one of the four women (specifically, Juror 12) whose identities were disclosed to the lawyers and whose non-membership in MADD was apparently verified by the trial judge. It therefore appears, at least on this murky record, that the trial court obtained fairly reliable information that no MADD member lied her way onto the jury.

And in fact, contrary to the majority's portrayal, the trial judge made a finding that there was no MADD member on the jury. The majority quotes the trial judge as saying: "I don't know, based on what I've heard, whether any of the jurors were members or affiliated with MADD or not." But the trial judge's next sentence was: "The evidence seems to indicate they're not." And at the next hearing, when the trial judge finally ruled on the claim of juror misconduct raised in Pappas's motion for a new trial, he stated: "In any case, nobody said they were a member of Mothers Against Drunk Driving, leading me to conclude that there were no members of Mothers Against Drunk Driving on the jury. So I didn't find that there was any misconduct." Although we need not defer to a factual finding of this sort if it was the product of a defective fact-finding process within the meaning of section 2254(d)(2), I don't believe the flaws in the fact-finding process rise to that level, so I would accord greater deference to the trial judge's finding. *See* 28 U.S.C. § 2254(e)(1); *see also Hurles v. Ryan*, 752 F.3d 768, 790 (9th Cir. 2014) (holding

9

that the court "cloak[s] the state court's factual findings in a presumption of correctness" under section 2254(e)(1) "if the state court's fact-finding process survives" review under section 2254(d)(2)).

**B.**

Now assume for the sake of argument that one of the two remaining female jurors was a member of MADD. The majority assumes that this would necessarily have entitled Pappas to a new trial. That's not obvious to me. To get a new trial, Pappas needed to show at least two things. The first is that the elderly woman juror was actually asked about MADD membership during jury selection and failed to disclose it. *See Fields v. Brown*, 503 F.3d 755, 766-67 (9th Cir. 2007) (en banc) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554-56 (1984)). But we have not been given the transcript of jury selection; all we have are the post-trial discussions between the judge and the lawyers about what they thought might have happened during jury selection. From these discussions, it's not clear that all prospective jurors were even asked whether they were members of MADD. Nor is it clear how prominent the issue of MADD membership was during jury selection, which matters because any false answer given by a prospective juror must be to a "material" question. *Id.*

Let's say, though, that all prospective jurors were asked whether they were MADD members and one juror lied. The second thing Pappas needed to show to get

10

a new trial was that the defense could have successfully challenged that juror for cause had she disclosed her alleged MADD membership. *See Fields*, 503 F.3d at 767 (quoting *McDonough*, 464 U.S. at 556). But all we have in the record is a post-trial assertion by the defense lawyer to the trial judge that the defense lawyer had successfully challenged another MADD member for cause. Because we don't have the transcript of jury selection, we don't know if that successful cause challenge was based on the prospective juror's MADD membership per se, or on her answers to follow-up questions about whether her membership would interfere with her ability to be a fair juror.

And if you made me guess, I might guess the latter, since it's not clear that a person should automatically be excused from serving on a jury in a drunk driving trial by virtue of her membership in MADD. As a general matter, if a prospective juror expresses a strong distaste for the kind of crime the government alleges the defendant to have committed, a trial judge will not excuse that person for cause if she says she would nonetheless refrain from convicting the defendant if the government did not prove its case beyond a reasonable doubt. A successful challenge for cause will, in most cases, require a showing of more than mere membership in a civic organization that has an interest in the subject matter at hand. *See United States v. Padilla-Mendoza*, 157 F.3d 730, 733-34 (9th Cir. 1998) (discussing *United States*

11

*v. Salamone*, 800 F.2d 1216, 1226-28 (3d Cir. 1986)); *cf. Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 805-06 (9th Cir. 2018).

**C.**

As with all habeas petitioners, Pappas bears the burden of demonstrating that he is entitled to relief. 28 U.S.C. § 2254(d); *see also Harrington*, 562 U.S. at 98. Yet, as should be obvious by now, the district court had (and we have) an incomplete record relating to this claim, which significantly hinders our ability to develop a meaningful understanding of what happened in the trial court, much less a meaningful understanding of the gravity of the misconduct allegation. There's nothing wrong with a federal district court ordering the record augmented in a habeas proceeding, so that the district judge is able to consider everything that was before the state courts. But I think we should be reluctant in a habeas case to respond to an incomplete record by ordering an entirely new evidentiary hearing in federal district court.

Speaking of which, what's supposed to happen at this evidentiary hearing? As mentioned previously, Juror 1's accusation of bias against the elderly woman juror was likely inadmissible under California law, and it almost certainly would not have been admissible in federal court following a federal prosecution, so I wonder if it would be admissible in the habeas hearing the majority has ordered. I also question whether it would be appropriate to compel MADD to produce its membership

records, to the extent that is what is envisioned for the evidentiary hearing. *See, e.g.,* *Church of Hakeem, Inc. v. Superior Court*, 110 Cal. App. 3d 384, 388 (1980). And, although I suppose there's a possibility that the remaining two women jurors could somehow be identified during this new federal district court proceeding and questioned about whether they were MADD members at the time of the trial, I'm not sure how this identification process would take place, and I'm highly skeptical it would produce anything probative of juror bias.

**III.**

Accordingly, I would affirm the district court's denial of the petition.