NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 22 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KENDALL KEVIN ANAGAL,

Defendant-Appellant.

No. 24-3099

D.C. No. 3:22-cr-08113-DJH

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Argued and Submitted September 16, 2025
Phoenix, Arizona

Before: COLLINS, MENDOZA, and DESAI, Circuit Judges.

Defendant-Appellant Kendall Anagal appeals his conviction, after a jury

trial, for three counts of aggravated sexual abuse and one count of abusive sexual

contact with a minor. *See* 18 U.S.C. §§ 2241(c), 2244(a)(5); *see also id*. § 1153

(applying these provisions to "[a]ny Indian who commits" such a crime "within the

Indian country"). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

**I**

Anagal challenges the district court's decision to admit the testimony of the

Government's expert, Dr. Wendy Dutton, a forensic psychologist specializing in

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

child sex abuse, under Federal Rules of Evidence 702, 401, 402, and 403. While we generally review a ruling on the admissibility of expert testimony for abuse of discretion, *United States v. Velazquez*, 125 F.4th 1290, 1293 (9th Cir. 2025), the Government contends that we should review for plain error because Anagal assertedly failed to properly preserve his objection for appeal. We need not decide this issue, however, because under either standard of review, the district court did not err in admitting Dutton's testimony.

Anagal argues that, because Dutton was never required to establish a clear methodology or a "potential rate of error" for her conclusions, the district court erred in qualifying her as an expert concerning certain characteristics of child sexual abuse victims, including delayed disclosure of abuse. But "the law grants a district court . . . broad latitude when it decides how to determine reliability" for purposes of Rule 702's standards governing expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999) (emphasis omitted). Dutton made clear that her general conclusions, including that delayed disclosure was "common," were based on both her review of the relevant literature and the thousands of forensic interviews she had conducted over nearly 40 years working in the field. *Kumho* makes clear that the specific reliability factors it identifies (such as a "potential rate of error") "do *not* constitute a definitive checklist or test" and that the Rule 702 "gatekeeping inquiry must be tied to the particular facts of a particular case." *Id.* at

2

150 (simplified). Given the nature of Dutton's testimony, which sought to describe certain observed phenomena in generalized terms and did not make case-specific judgments or employ precise numerical parameters, the district court did not abuse its discretion in concluding that Dutton's testimony was based on sufficiently reliable methods and did not require articulation of a purported error rate. *See id*. at 153; *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000).

The district court also did not abuse its discretion in concluding that Dutton's testimony was relevant, *see* FED. R. EVID. 401, 402, and that its probative value was not substantially outweighed by a danger of unfair prejudice, *see* FED. R. EVID. 403. The district court reasonably concluded that Dutton's testimony was relevant because it addressed what Dutton characterized as "some of the common myths about child sexual abuse: how victim[s] react to, disclose, and respond to such abuse and why." Moreover, Dutton's "testimony had significant probative value in that it rehabilitated (without vouching for) the victim's credibility after she was cross-examined about the reasons she delayed reporting." *United States v. Bighead*, 128 F.3d 1329, 1331 (9th Cir. 1997), *abrogated in part on other grounds as stated in United States v. Halamak*, 5 F.4th 1081, 1088 (9th Cir. 2021). The fact that Dutton testified as a "blind expert" who did not address the specific facts of this case does not vitiate her testimony's relevance; indeed, it may reasonably be thought to mitigate the risk of unfair prejudice by ensuring that she "testified only

3

about 'a class of victims generally,' and not the particular testimony of the child victim in this case." *See id.* (affirming rejection of a comparable Rule 403 argument).

## II

The district court did not abuse its discretion when it admitted testimony by the victim's mother regarding Anagal's prior sexual abuse against her.

Rule 413(a) provides that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault" and that such evidence "may be considered on any matter to which it is relevant." FED. R. EVID. 413(a). Congress enacted Rule 413 as an exception to Rule 404(b), which would otherwise preclude prior bad act evidence if offered to show criminal propensity. *United States v. Porter*, 121 F.4th 747, 750 (9th Cir. 2024); *see* FED. R. EVID. 404(b)(1). Admissibility under Rule 413, however, remains subject to Rule 403. *Porter*, 121 F.4th at 750. This court has articulated five nonexclusive factors a district court should evaluate when admitting evidence under Rule 413:

> (1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial.

*United States v. LeMay*, 260 F.3d 1018, 1027–28 (9th Cir. 2001) (internal

4

quotation marks and citation omitted).  The district court carefully and explicitly

considered these factors, requiring the Government to make a further showing as to

some of them, and only ruling in favor of admissibility after receiving and

considering that further submission.  The district court also made clear that its

ruling was contingent upon the Government laying an appropriate foundation at

trial and that the court would give a limiting instruction concerning the jury's

consideration of this evidence.  Particularly given the similarities between one

specific type of abuse that Anagal allegedly inflicted on both victims, we discern

no abuse of discretion in the district court's analysis.

### III

Anagal challenges the district court's admission of the peephole and video-

recording evidence on four grounds: namely, that the evidence (1) lacked proper

foundation; (2) was not "inextricably intertwined" with the crime and therefore

squarely implicated Rule 404(b); (3) was impermissible propensity evidence barred

by Rule 404(b)(1); and (4) was unfairly prejudicial under Rule 403.  We have

doubts as to whether the Government articulated a valid, non-propensity purpose

for which the evidence was admissible.  But assuming *arguendo* that the district

court abused its discretion in admitting this evidence, we nonetheless conclude that

the Government has carried its burden to show that it was "more probable than

not" that the admission of the peephole and video-recording evidence "did not

5

materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc).

The victim testified in detail about the alleged sexual assaults, which did not involve peepholes or a camera. Her allegations were corroborated by testimony from her brothers, one of whom had once walked in on his frightened sister and Anagal in her bedroom after hearing "banging on the wall and screaming," and another of whom once saw Anagal enter the bathroom while the victim was showering, only to see his sister later emerge, after Anagal, looking "shocked and terrified." Her mother's testimony, including the Rule 413 evidence, also provided circumstantial corroboration for the victim's claims. Moreover, the video and peephole evidence did not play a significant role in the Government's closing arguments, given that it was mentioned only at the end of the Government's summary of the evidence in its initial closing argument and was not mentioned at all in the Government's rebuttal argument. Against this backdrop, we conclude that it is more likely than not that the video and peephole evidence did not materially affect the verdict.

**IV**

The district court did not abuse its discretion when it denied Anagal's request to investigate Juror 14's possible motive for belatedly reporting Juror 5's

misconduct, which ultimately led to the valid removal of Juror 5.[1]

Rule 606(b) prohibits a court from receiving, "[d]uring an inquiry into the validity of the verdict," a juror's testimony, affidavit, or statements regarding "[1] any statement made or incident that occurred during the jury's deliberations; [2] the effect of anything on that juror's or another's juror's vote; or [3] any juror's mental processes concerning the verdict." FED. R. EVID. 606(b)(1). Anagal concedes that he sought information from Juror 14 "[d]uring an inquiry into the validity of the verdict" within the meaning of the rule. *Id*. But he contends that the actions that Juror 14 took with respect to Juror 5 do not fall within any of the three above-quoted categories of prohibited evidence. We disagree.

Under the plain language of the rule, Juror 14's alleged motivations in reporting Juror 5's misconduct fall squarely within Juror 14's "mental processes concerning the verdict." FED. R. EVID. 606(b)(1). Anagal's effort to probe Juror 14's mental state during deliberations on the ground that her actions allegedly showed tactics or bias is thus squarely prohibited by the rule. *Id*. Anagal contends that the phrase "mental processes concerning the verdict" should be narrowly construed as referring only to jurors' thoughts in evaluating the evidence and "deciding how to vote (i.e., to convict or acquit)," but this argument ignores the

---

[1] Anagal acknowledged at oral argument that he does not contest the validity of Juror 5's removal.

7

breadth of the actual words used in the rule. Anagal's inquiry sought "to shed light on the internal affairs of the jury," which is "categorically barred" under Rule 606(b). *See United States v. Leung*, 796 F.3d 1032, 1035–36 (9th Cir. 2015).

Because Anagal does not contend that any of Rule 606(b)'s three exceptions applies in this case, we conclude that the district court properly exercised its discretion in denying Anagal's motion for discovery concerning Juror 14. The district court therefore did not abuse its discretion in denying Anagal's post-trial motion for mistrial or acquittal asserting these same grounds.

**AFFIRMED.**